UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:20-cr-438-RJC |
| | ) | |
| v. | ) | **SUPERSEDING BILL OF** |
| | ) | **INDICTMENT** |
| | ) | |
| BRYON JONES | ) | 18 U.S.C. § 1014 |
| | ) | 18 U.S.C. § 1343 |
| | ) | 18 U.S.C. § 1957 |

THE GRAND JURY CHARGES:

At all times material to this Indictment:

## Introduction

1.  Defendant BRYON JONES used false information, including fake revenues, costs, and employment data, to apply for and obtain $142,900 in COVID-19 relief funds from the United States Small Business Administration ("SBA") that were intended to be provided to existing business harmed by the COVID-19 pandemic.

## The CARES Act

2.  The SBA is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

3.  On March 27, 2020, the President signed into law the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which was designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. The CARES Act established several new temporary programs and provided for the expansion of others, including programs created and/or administered by the SBA, to administer the emergency relief.

4.  One of the programs expanded by the CARES Act was the Economic Injury Disaster Loan ("EIDL") program, which is a SBA program that provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters. The CARES Act authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing "substantial economic injury" due to the COVID-19 pandemic.

1

5. EIDL proceeds may only be used for working capital to pay expenditures necessary to alleviate the specific economic injury the small business suffered due to COVID-19. Covered expenditures include fixed debts, payroll, accounts payable, and other ordinary and necessary financial obligations that the business cannot meet as a direct result of the pandemic. EIDL proceeds may not be used to replace lost sales or profits or to expand a business. A business that was not in operation at the time of the disaster is not eligible for an EIDL, and under SBA rules, an applicant or a business whose principal owner is presently on parole or probation following conviction of a serious criminal offense is also not eligible for an EIDL.

6. The CARES Act also authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. The amount of the advance was determined by the number of employees indicated on the EIDL application. An advance does not have to be repaid, but the amount is deducted from total loan eligibility.

7. EIDL funds are issued directly from the United States Treasury, and an applicant applies through the SBA via an online portal. In the electronic application, the applicant certifies that all of the information in the application is true and correct to the best of the applicant's knowledge and is warned that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds may result in sanctions, including criminal penalties. The application also states that the SBA relies upon the self-certifications in the EIDL application in determining whether the applicant is eligible for an EIDL.

8. The EIDL application process collects information concerning the business and the business owner, including information regarding the business's gross revenue for the 12-month period preceding the disaster, which, for COVID-19, is defined as January 31, 2020; the cost of goods sold for the 12-month period preceding the disaster; the number of employees employed by the business at the time of the disaster; information as to the criminal history of the business owner; and information regarding anyone that assisted in the preparation of the application.

## The Scheme to Defraud

9. JONES devised a scheme and artifice to defraud the United States, specifically the SBA, by: (1) preparing and causing to be prepared false and fraudulent EIDL loan documents, including an application, loan authorization and agreement, and other forms; (2) submitting and causing to be submitted the false and fraudulent loan documents to the SBA in order to obtain funds through the EIDL program; and (3) receiving and obtaining payments and benefits based on the fraudulent loan documents.

## Manner and Means of the Scheme to Defraud

10. The manner and means by which JONES sought to accomplish the objects and purpose of the scheme and artifice included, among others:

2

11. On or about April 16, 2020, JONES caused Ramses Air Freight & Transport Inc. ("Ramses") to be incorporated in Delaware. According to public records, Ramses's principal office is on Plumleaf Road in Charlotte, North Carolina, at JONES's home address.

12. On or about May 5, 2020, JONES opened a business bank account, specifically a Wells Fargo Business Choice Checking account, with Ramses as the sole owner on the account and JONES as the signer on the account ("Account -1510").

13. On or about June 27, 2020, JONES electronically submitted and caused to be submitted an application for an EIDL in the name of Ramses Air Freight & Transport Inc. to the SBA ("EIDL Application -2285"). In connection with EIDL Application -2285, JONES falsely affirmed that Ramses Air Freight & Transport Inc. had 14 employees as of January 31, 2020; had $286,000 in gross revenues for the 12 months prior to January 31, 2020; had suffered $14,760 in lost rents due to the disaster; and had $138,389 in non-profit/agricultural enterprise costs of operation for the 12 months prior to January 31, 2020. JONES also affirmed that he had not been placed on any form of parole or probation in the five years prior to January 31, 2020, and that he had neither applied through a representative nor paid any representative a fee to prepare the application.

14. In truth and in fact, and as JONES well knew, Ramses Air Freight & Transport Inc. had no employees, gross revenues, lost rents, or non-profit/agricultural enterprise costs of operation for the 12 months prior to January 31, 2020. JONES had also been placed on a ten-year term of supervised release on November 13, 2019.

15. On or about June 27, 2020, EIDL Application -2285 was approved for a $10,000 advance, which was deposited into Account -1510 on or about June 30, 2020.

16. On or about July 10, 2020, EIDL Application -2285 was approved for an EIDL in the amount of $133,000.00, less a $100.00 fee ("SBA Loan -8108").

17. On or about July 10, 2020, JONES electronically signed the Loan Authorization and Agreement in connection with SBA Loan -8108. In the Loan Authorization and Agreement, JONES certified that all of the representations in EIDL Application -2285 were true, correct and complete and were offered to induce SBA to make the loan.

18. On or about July 14, 2020, in connection with SBA Loan -8108, EIDL funds totaling $132,900.00 were deposited into Account -1510.

19. After the fraudulent loan proceeds were deposited into the Ramses Air Freight & Transport Inc. bank account, JONES diverted and caused to be diverted some of the fraudulently-obtained funds for personal use and for business purposes not authorized under the terms of the EIDL program, including at least $16,563.83 in transfers between June 2020 and September 2020 to his personal checking account referencing CEO salary payments; a

3

withdrawal of $13,000 in cash; and other business-related purchases used to expand Ramses Air Freight & Transport Inc. that were not authorized under the EIDL.

## **COUNT ONE**
(Wire Fraud)

20. Paragraphs 1 through 19 of this Superseding Bill of Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

21. From on or about April 16, 2020 through on or about September 28, 2020, in the Western District of North Carolina and elsewhere, the defendant,

**BRYON JONES**

with the intent to defraud, did knowingly and intentionally devise the above-described scheme and artifice to defraud and to obtain money by materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice to defraud, did transmit and cause to be transmitted by means of wire communication in interstate commerce any writing, signal, picture, and sound, *to wit*, electronic loan applications, wire transfers, and other electronic financial transactions in interstate commerce.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWO
(False Statements to the Small Business Administration)

22. Paragraphs 1 through 19 of this Superseding Bill of Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

23. On or about July 10, 2020, in the Western District of North Carolina and elsewhere, the defendant,

**BRYON JONES**

did knowingly make and cause to be made a false statement or report for the purpose of influencing the action of the SBA in connection with the EIDL program, which it administers pursuant to a provision of the Small Business Act. The defendant stated and caused to be stated in the Loan Authorization and Agreement that all representations in EIDL Application -2285 were correct and complete and that no fees have been paid, directly or indirectly, to any representative for services provided or to be provided in connection with applying for SBA Loan -8108, other than those reported on EIDL Application -2285. In truth and in fact, and as the defendant well knew, the following representations in EIDL Application -2285 were false: Ramses Air Freight & Transport Inc.'s employees, revenues, lost rents, and costs; JONES's supervised release status; that the application was not submitted through a representative; and that no representatives were paid for preparing the application. JONES subsequently paid a representative $13,000 in connection with her preparation of EIDL Application -2285.

All in violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT THREE
(Engaging in Monetary Transactions in Criminally Derived Property)

24. Paragraphs 1 through 19 of this Superseding Bill of Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

25. On or about July 15, 2020, in the Western District of North Carolina and elsewhere, the defendant,

**BRYON JONES**

did knowingly engage and attempt to engage in a monetary transaction by, through and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, money deposits which represented fraudulently obtained disaster-related loan proceeds, such property having been derived from a specified unlawful activity, that is, wire fraud and false statements to the Small Business Administration, *to wit*, a withdrawal from Account -1510 in the amount of $13,000.00.

All in violation of Title 18, United States Code, Section 1957.

## NOTICE OF FORFEITURE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

a. All property which constitutes or is derived from proceeds of the violations set forth in Counts One through Two of this Superseding Bill of Indictment;

b. All property involved in the violations set forth in Count Three of this Superseding Bill of Indictment; and

c. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) and (b) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a) and (b).

The Grand Jury finds probable cause that the following property is subject to forfeiture on one or more of the grounds stated above:

a. A forfeiture money judgment in the amount of at least $142,900.00, such amount constituting the proceeds of the violations set forth in this Superseding Bill of Indictment.

A TRUE BILL:

FOREPERSON

WILLIAM T. STETZER
ACTING UNITED STATES ATTORNEY

GRAHAM BILLINGS
ASSISTANT UNITED STATES ATTORNEY